## THACKERAY v. SAXLEHNER.*

(Circuit Court of Appeals, Seventh Circuit. October 6, 1903.)

No. 951.

1. TRADE-MARKS—INFRINGEMENT—"HUNYADI" WATERS.

The name "Hunyadi" having been established by complainant as a valid trade-mark for natural bitter waters from Hungary, its use by defendant to designate bitter waters manufactured by him in accordance with a secret formula is an infringement, and complainant is not estopped to maintain a suit for such infringement by the fact that through laches she was so estopped as against certain importers of other Hungarian waters who had used the name for a number of years, where defendant began its use subsequently and after complainant had commenced a vigorous assertion of her rights.

Appeal from the Circuit Court of the United States for the Northern District of Illinois.

The suit in the Circuit Court was brought by the appellee, widow of Andrew Saxlehner, deceased, and successor to his business, a resident of the city of Budapest, and a subject of the Kingdom of Hungary, against the appellant, a citizen of the state of Illinois, resident of Chicago, to enjoin appellant from using the word "Hunyadi" as a name for waters manufactured and sold by appellant, and from using a style of bottle, capsule, and label similar to that used by appellee for her Hunyadi Janos water. Upon the hearing in the Circuit Court, a decree was entered finding for appellee, and enjoining appellant from using the name "Hunyadi" in connection with his waters, and from selling or offering for sale any such bitter water in bottles, and under labels, in imitation so closely in general appearance of appellee's Hunyadi Janos bottles and labels as to be calculated to deceive the public. From this decree this appeal is prosecuted.

The further facts are stated in the opinion of the Court.

John G. Elliott, for appellant.

Antonio Knauth, for appellee.

Before JENKINS, GROSSCUP, and BAKER, Circuit Judges.

GROSSCUP, Circuit Judge. The appellant manufactures in Chicago, according to a recipe not disclosed, the bitter waters to which he attaches the name of Hunyadi Geyza. His business was not in existence prior to the decision of the Supreme Court, in Saxlehner v. Eisner & Mendelson Company, 179 U. S. 19, 21 Sup. Ct. 7, 45 L. Ed. 60, nor has he ever been, so far as the record discloses, an importer of natural bitter waters from Hungary. Whether, under these circumstances, appellee is entitled to restrain his use of the word "Hunyadi," is the principal question presented.

It is stipulated that the facts set forth in Saxlehner v. Eisner & Mendelson Company, supra, are to be taken as the facts in the case under consideration. Without transcribing into this opinion the statement at large, it is sufficient to say that in 1862 Andreas Saxlehner, predecessor of appellee, discovered at Budapest, Hungary, a spring named by him "Hunyadi," in honor of a Hungarian hero of

*Rehearing denied November 18, 1903.

¶ 1. Laches as a defense in suit for infringement of trade-mark or trade-name, see notes to Taylor v. Spindle Co., 22 C. C. A. 211; Richardson v. D. M. Osborne & Co., 36 C. C. A. 613.

the fifteenth century; that under an order of the municipal council of the place where the wells were located, he subsequently sunk other wells, and began to export the waters to European countries and the United States; that for this purpose he adopted a novel style of bottle of straight shape with short neck, to which was attached a metal capsule bearing the inscription (translated) "Hunyadi Janos bitter water of Buda", as also a peculiar label covering the body of the bottle, divided into three longitudinal panels, the middle one of which bore the supposed portrait of the hero, with the name Hunyadi Janos written in large letters on the top—the color of the middle panel being a reddish brown, and the other panels white; and the water, in this kind of bottles, has found its way to the United States to the extent of about one million bottles a year, and is known at large as Hunyadi water.

In 1872 another water from the same locality was, under an order of the Minister of Agriculture of Hungary, put upon the market under the name of "Hunyadi Matyas", and under that name found its way into the United States. Other waters from the same locality, known as "Hunyadi Arpad", and "Hunyadi Josef" and the like, came under the permission named upon the market, including the market of the United States.

Against some of these importers, suits were brought in 1886 in the Circuit Court of the United States and in the State Courts of New York, by the Apollinaris Company, Limited, of London, the distributing agents of Saxlehner; in some of which suits ex parte injunctions were issued, and in others the suits withdrawn for want of jurisdiction; but in 1888 the pending injunctions were dissolved, and the suits discontinued. In all of these suits the defendants thereto seem to have relied upon the fact, that under the laws of Hungary, as the laws then were, they could rightly use the word "Hunyadi", provided they annexed thereto as a suffix, a word different from "Janos." Subsequently, however, the laws of Hungary were changed, so that in 1895 Saxlehner was enabled to register the name "Hunyadi" as a trade mark, and to procure the cancellation of the other trade marks incorporating that name. Under this changed law of Hungary the case of Saxlehner v. Eisner & Mendelson Company, supra, was brought in 1897.

As we read the decision in that cause, the Supreme Court held, that appellee had a rightful monopoly of the use of the word "Hunyadi", and that there had been no such abandonment as made it a generic term, usable at the pleasure of any one engaging in the sale of bitter waters; but that, owing to laches—her failure to bring suit against certain importers engaged in the importation of natural bitter waters from Hungary—appellee was estopped, as against them, from maintaining her suit. The defeat of appellee, and the success of her opponents, in the case, was grounded, not upon abandonment, but upon estoppel—an estoppel growing out of the fact that the importers defending had been allowed, during the period of appellee's acquiescence, a period of nine years, to build up a business in the importation and sale of natural Hungarian waters in the markets of the United States.

But the estoppel named will not avail the appellant·in the case under consideration. He was not engaged in the sale of his waters until after appellee had commenced vigorously to assert her right to the exclusive use of the word "Hunyadi." He entered the market, therefore, with this name upon his manufactured water, not under the implied permission, but against the earnest protest, of the owner of the name. Nor is appellant's case in other essential respects like that of the importers of natural bitter waters from Hungary. Such importers, though giving to the public water other than that from appellee's springs, give genuine native Hungarian water of a char-, acter almost identical with that of appellee, and at a price measured by the cost of bringing it from Hungary to the United States. Appellant offers a manufactured water of whose contents the public has no knowledge, and at a cost ruinous to the importation of the genuine water. The Supreme Court never meant, in our judgment, to throw around such a competitor, the protection of the estoppel indicated, or expose the public to a device under which they would drink the waters of Lake Michigan, doctored after appellant's recipe, in the belief that they were drinking the natural waters of Hungary.

It is unnecessary in the view thus taken to go into the case turning upon the similitude of bottles, capsules and labels; for if appellant is enjoined from the use of the word "Hunyadi", the other questions become practically unimportant.

The decree of the Circuit Court is affirmed.