## SAXLEHNER v. WAGNER et al.

(Circuit Court of Appeals. Sixth Circuit. December 26, 1907.)

### No. 1,682.

TRADE-MARKS AND TRADE-NAMES—UNFAIR COMPETITION—ARTIFICIAL SPRING WATER.

The proprietor of the Hunyadi Janos Springs in Buda-Pesth, Hungary, having, as determined by the Supreme Court, through laches in permitting other bitter Hungarian waters to be imported and sold in the United States under the general name of "Hunyadi" waters, lost the right to protection in the exclusive use of such word as a trade-mark, except in connection with the word "Janos," cannot maintain a suit to enjoin the sale of a water made in this country under the label "Carbonated Artificial Hunyadi, Conforming to Fresenius' Analysis of the Hunyadi Janos Springs," where it is not claimed that it does not contain the same chemical ingredients and there is no similitude in the dress; there being

nothing in such name to mislead purchasers or make a case of unfair competition.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trade-Marks and Trade-Names, §§ 78–86.

Unfair competition, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.]

Appeal from the Circuit Court of the United States for the Western Division of the Southern District of Ohio.

The following is the opinion of the Circuit Court, by Thompson, District Judge:

The bill shows that the complainant owns certain wells or springs in the city of Buda-Pesth, Hungary, the water of which possesses valuable medicinal properties, and that she sells this water, a bitter water, throughout the world under the trade-mark or trade-name of "Hunyadi Janos," and she complains: (1) That the defendants are wrongfully selling an artificial bitter water of their own manufacture under the same name, to her injury. (2) That the defendants are also, wrongfully and to her injury, selling this artificial bitter water under the name of "W. T. Wagner's. Sons Carbonated Artificial Hunyadi, Conforming to Fresenius' Analysis of the Hunyadi Janos Springs." And she prays that the defendants may be enjoined from selling this artificial bitter water under these names, and for an accounting, etc. The cause is now submitted upon the motion of the complainant for a preliminary injunction and upon the general demurrer of the defendants to the bill.

1. In Saxlehner v. Eisner & Mendelson Company, 179 U. S. 19, 21 Sup. Ct. 7, 45 L. Ed. 60, the Supreme Court found that the Hungarian bitter waters were largely known in this country, as "Hunyadi Waters," and that in a certain sense the word "Hunyadi" had become a generic name for them, and held that the complainant here had not an exclusive right to use that word as the trade-mark or trade-name of the water coming from her wells; but her right to use it in combination with the suffix "Janos" was not denied, and it clearly appears, from the bill and the affidavit submitted with the motion, that she has a valid trade-mark or trade-name in the words "Hunyadi Janos," as applied to the water coming from her wells, and which distinguishes that water from all other bitter water, Hungarian or otherwise. The right of the complainant to use this trade-name is absolutely exclusive, and therefore its use by the defendants, as applied to their artificial bitter water, after notice to desist, is wrongful and should be restrained, notwithstanding the use of the word "Artificial" in connection therewith.

2. The plaintiff complains of unfair competition by the defendants in the use of the word "Hunyadi." Although in the view of the Supreme Court in the Eisner & Mendelson Company Case, that word had become generic and indicative of the whole class of Hungarian bitter waters, yet, as an owner of Hungarian springs producing such waters, she insists that she is entitled to protection against the use of the word by the defendants to palm off on the public their artificial bitter water as one of the Hungarian bitter waters, and the question arises as to whether she has made a case in pleading calling for such protection. The ground upon which courts of equity intervene to prevent unfair competition and infringement of trade-marks is the same, namely, for the protection of rival traders and the purchasing public from the fraudulent practices of the wrongdoer, who seeks to sell his goods as the goods of another, because the goods of that other have a better reputation in the market. In cases of strict trade-mark fraud is presumed from the unauthorized use of the trade-mark, while in case of unfair competition the fraudulent intent or the actual misleading of the purchasing public must be shown by evidence, and the evidence must conform to the case made in pleading. Now, if it be true that the defendants are selling their water under the name "W. T. Wagner's Sons Carbonated Artificial Hunyadi, Conforming to Fresenius' Analysis of the Hunyadi Janos Springs," is there, in this name, any representation or suggestion that the water is that of the complainant, or that it is one of

the Hungarian bitter waters, or is there a false statement contained therein calculated to mislead intending purchasers and induce them to buy defendants' artificial water in the belief that it is the natural water coming from the springs of the complainant? None whatever; on the contrary, the statement shows that the water offered for sale is not the natural water from complainant's well, but an artificial water made in conformity with Fresenius' analysis of the Hunyadi Janos springs. The defendants have a right to make a water in conformity with Fresenius' analysis of the Hunyadi Janos springs, and have a right to sell it, provided they sell it as an artificial water, and do nothing to mislead the public into the belief that it is natural water or to confuse the identity of the two waters. If the public are put into a position to intelligently choose between the natural and the artificial water, no wrong will be done. In the case of Pillsbury v. Eagle, 86 Fed. 608, 30 C. C. A. 386, 41 L. R. A. 162, and the other cases covering the same point, cited by counsel for the complainant, either actual fraud was shown or the representations, practices, and conduct of the defendant or defendants were such as to mislead the public and produce practically the same results as if actual fraud had been perpetrated.

The demurrer will be overruled, and the defendants, pending the final hearing, will be enjoined from using the complainant's trade-mark "Hunyadi Janos."

A. Kauth and F. F. Reed, for appellant.

W. F. Murray, for appellees.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

RICHARDS, Circuit Judge. This was a suit brought by Emilie Saxlehner, the widow and successor of Andrew Saxlehner, the proprietor of the original spring at Buda-Pesth, in Hungary, which produces a bitter medicinal water to which he gave the name "Hunyadi Janos," to enjoin Edward Wagner, William Wagner, and Sophia Wagner, makers and sellers, in Cincinnati, Ohio, of artificial waters, from manufacturing and selling an artificial water either under the name of "Hunyadi Janos" or "Hunyadi." The court below granted an injunction restraining the sale of artificial bitter water under the name of "Hunyadi Janos," holding that such phrase constituted a trade-mark, the right to use which was exclusive in the plaintiff; but, coming to the sale of artificial bitter water made in conformity with Fresenius' analysis of the Hunyadi Janos spring, and called "Artificial Hunyadi Water," held that, under the decision of the Supreme Court of the United States in the case of Saxlehner v. Eisner & Mendelson Co., 179 U. S. 19, 21 Sup. Ct. 7, 45 L. Ed. 60, the name "Hunyadi" had, by the laches of the plaintiff and her predecessor, become generic, indicative of a whole class of similar medicinal waters, and thus, not only in Hungary, but in this country, the word had become public property. The right to individual appropriation thus once lost was gone forever.

There being no exclusive individual right in the plaintiff, the court below held that no case of unfair competition was made out, because nothing was done by the Wagners, either in the way they dressed their bottles of artificial Hunyadi water, or in the manner in which they advertised the same, to mislead the public or induce purchasers to believe that they were getting the natural Hunyadi water when they bought the artificial. All the propositions apparently argued before the court below were pressed with much force upon us, and in support of them we were especially referred to the case of Saxlehner v. Thackeray,

originally decided by Judge Kohlsaat, and afterwards, on appeal, by the Circuit Court of Appeals of the Seventh Circuit. Thackeray v. Saxlehner, 125 Fed. 911, 60 C. C. A. 562. In the opinion of Judge Kohlsaat, printed in the record, stress is laid upon the fact that the artificial water sold by Thackeray under the name of "Hunyadi water," was put out as the natural Hunyadi water, which, of course, would warrant an injunction on the ground of unfair competition. In the opinion of the Court of Appeals (125 Fed. 912, 60 C. C. A. 562) it is pointed out that the decision in the case of Saxlehner v. Eisner & Mendelson Co., 179 U. S. 19, 21 Sup. Ct. 7, 45 L. Ed. 60, was not based upon the abandonment by Saxlehner and his successor of the right to use the word "Hunyadi" to describe the natural medicinal water on sale, but upon the laches of Saxlehner and the failure to sue certain importers of similar medicinal water from the Buda-Pesth section in Hungary for using the word "Hunyadi" to describe their waters. Such estoppel, the court held, could not avail Thackeray, for he was not engaged in selling artificial "Hunyadi water" until after Saxlehner's successor had commenced vigorously to assert her right to the exclusive use of the word "Hunyadi." And, besides, the defendants, who were protected by the decision of the Supreme Court of the United States, were importers of natural bitter waters from Hungary. The Supreme Court never intended to throw such protection around a manufacturer of artificial medicinal water. Having planted itself upon this ground, the court thought it unnecessary to go into the question of the similitude of the bottles, capsules, and labels.

We have great respect for the Circuit Court of Appeals of the Seventh Circuit, but we find ourselves unable to agree with the view it takes of the result of the case of Saxlehner v. Eisner & Mendelson Co. It seems to us that the subsequent case of French Republic v. Saratoga Vichy Springs Co., 191 U. S. 427, 24 Sup. Ct. 145, 48 L. Ed. 247, throws a light upon that decision which is useful. This suit was brought to vindicate the right of the French Republic and its lessee to the exclusive use of the word "Vichy," as against the Saratoga Vichy Springs Company. The court held that in view of the fact that the Saratoga Vichy Springs Company, and numerous manufacturers of artificial waters, had for many years been selling their waters in this country under the name of "Vichy" without any protest or action on the part of the French company, the latter had thus allowed the name "Vichy" to become generic and indicative of the character of the water, referring to the case of Saxlehner v. Eisner & Mendelson, 179 U. S. 19, 21 Sup. Ct. 7, 45 L. Ed. 60. The court therefore refused to enjoin the label used by the Saratoga company, but indicated that, if it had been so framed as to mislead the public into believing that the water which came from the Saratoga springs was the real French vichy, it would grant the injunction prayed for, or compel a change in the label which would clearly indicate the origin of the water. We think the plain effect of this decision, coupled with that in Saxlehner v. Eisner & Mendelson Co., is to hold that, where the protection of a trade-mark is lacking, the name of the natural imported water may be applied either to a similar natural water drawn from a spring in this country or to artificial water made according to an analysis of a foreign spring,

provided the latter be of the same general character, and, if artificial, contain the same chemical ingredients and properties as the imported natural water. To the same effect see decisions in City of Carlsbad v. Schultz (C. C.) 78 Fed. 469, and La Republique Francaise v. Schultz (C. C.) 94 Fed. 500.

There being no trade-mark shown, and no case of unfair competition proved, the judgment of the court below must be affirmed.