BARNES et al. v. PIERCE.

(Circuit Court, S. D. New York. September 23, 1908.)

TRADE-MARKS AND TRADE-NAMES — UNFAIR COMPETITION — INJUNCTION — GROUNDS—INJURY TO BUSINESS.

The manufacturer of an antiseptic, to which he gave the artificial name "Argyrol," *held* entitled to an injunction to restrain defendant, a jobbing druggist, from placing argyrol on his price list and supplying customers who called for the same with a different and cheaper preparation in its place.

Robinson, Biddle & Benedict (Mr. Benedict, of counsel), for complainants.

Herbert H. Maass, for defendant.

WARD, Circuit Judge. This is a motion for preliminary injunction. The affidavits show that the complainants manufacture an antiseptic under the artificial name "Argyrol," which has attained considerable popularity. It is not complained that the defendant, who is a jobbing druggist, imitates this name or the complainant's package.

March 25, 1908, one Caton having presented a written order for "argyrol" at defendant's store, his clerk said: "We don't keep argyrol. We keep nucleinate of silver, which is the same thing"—and he handed the purchaser a price list, on which was printed "$1.20 oz. argyrol."

March 28, 1908, one Bagg presented a prescription at the defendant's store which called for "one oz. argyrol." The clerk handed him a bottle marked "1 oz. silver of nucleinate." Bagg asking him whether he had not made a mistake, the clerk replied, "Well, you can take it or leave it," whereupon Bagg said, "I want to be sure this is argyrol, because I don't want to have to come downtown again." The clerk replied, "That is probably what the doctor wants," and made out a receipt for "1 oz. S. Arg." Bagg said: "You have billed this wrong. You have written it '1 oz. S. Arg.,' and it should be 'Silver of Nucleinate,' as labeled on the bottle." The clerk replied: "It doesn't make any difference. We used to bill it differently, but now we bill it 'Silver Arg.'"

March 11, 1908, Richard D. and Marcie Dunn presented an order blank from a Brooklyn chemist for "argyrol." The clerk said: "I can give you 'silver of nucleinate.'" Dunn asked: "Is this the same stuff as 'argyrol,' which the order calls for?" The clerk replied: "I don't know. I don't put it up. We have it in the hands of the lawyer now, but we have the right to call it 'argyrol'. Argyrol is $1.85, and

this is $1.20; and you will save money by buying this. You can take it to the druggist, and if it isn't right you can bring it back." He signed a receipt: "1 oz. Silver Nucleinate, $1.20."

June 3, 1908, one Rourke called for "2 oz. of argyrol." The clerk gave him a bottle labeled "Silver Nucleinate." The defendant personally entered the office, and the clerk remarked to Rourke and explained to defendant that Rourke was a New Jersey druggist. Rourke picked up the bottle and said: "What is this?" The clerk replied: "This is the same thing as 'argyrol.' That is the chemical name. That is 'argyrol.' It is the same thing."

The defendant states in his verified answer and in his affidavit that he has never carried argyrol or offered the same for sale. The fact that he does print it on his price list as sold for $1.20 an ounce, much lower than argyrol is sold, seems consistent only with his intention to do the very thing the complainant alleges, viz., to offer the public argyrol at less than the market rates and then deliver to purchasers nucleinate of silver as argyrol.

The affidavits show that the chemical composition of the two articles is not the same, and, even if it were, the defendant would have no right to deliver nucleinate of silver to a purchaser asking for argyrol without an explanation. It is true that explanations were made to Dunn, Bagg, and Rourke; but they had demurred, and, if they had not, I think none would have been made. If the defendant were selling nucleinate of silver, saying that it was as good or better than argyrol, or that it was the same as argyrol, if that were the fact, the complainants would have no ground for objection.

The cases relied upon by the defendant (Goodyear's India Rubber Glove Manufacturing Co. v. Goodyear Rubber Co., 128 U. S. 604, 9 Sup. Ct. 166, 32 L. Ed. 535; Canal Co. v. Clark, 13 Wall. 327, 20 L. Ed. 581; French Republic v. Saratoga Springs Vichy Co., 191 U. S. 427, 24 Sup. Ct. 145, 48 L. Ed. 247; and Saxlehner v. Wagner [C. C. A.] 157 Fed. 745) only hold that words which are public either in their nature, as (with certain qualifications) geographical names, and names which, though private property, have become public by abandonment or laches, such as "Goodyear's Rubber," "Hunyadi," and "Vichy," cannot be monopolized by any one. This does not apply to the artificial word "Argyrol," or justify the defendant in inviting the public to buy argyrol of him and delivering nucleinate of silver in its place. Enoch Morgan's Sons Co. v. Wendover (C. C.) 43 Fed. 420, 10 L. R. A. 283.

Motion granted.