## PAUL v. WOODS.
### No. 4595.

District Court, E. D. New York.
March 14, 1930.

Crichton Clarke, of New York City (Crichton Clarke and Hugo Mock, both of New York City, of counsel), for plaintiff.

Max D. Steuer, of New York City (Henry Epstein, of New York City, of counsel), for defendant.

CAMPBELL, District Judge.

This is an action for alleged infringement by the defendant of plaintiff's trade-mark, and for unfair competition.

A preliminary injunction was granted to plaintiff against defendant in the instant suit.

The complaint herein alleges an adoption, by the plaintiff and plaintiff's predecessor, of a trade-mark containing the letters "L. U. P.," in or about 1910, the beginning of an export business to the United States in or about April, 1923, and since said date, of angora wool with said label or trade-mark, the registration in France, in September, 1926, exports into the United States since July, 1923, an intention to continue business with said label and trade-mark in the United States, an alleged secondary meaning and trade value due to plaintiff's efforts in the United States, an inquiry by the defendant in the year 1925, and a tentative agency in the year 1927, with subsequent wrongful appropriation of said trade-mark by the defendant for use in the United States on angora wool, to the plaintiff's damage.

The complaint also alleges deceit practiced upon the public in the United States by

the defendant's use of the letters "L. U. P." upon a label for angora wool in the United States, and that this was with the knowledge that the said label was the plaintiff's property.

The defendant in his answer sets up a general denial, and alleges as a distinct defense to the whole of plaintiff's alleged cause of action, that the title and the right to the use of said letters "L. U. P." and the said alleged trade-mark belong to and reside in the defendant by reason of the defendant's prior use, and continued and substantial use of the trade-mark and label in the United States, over a period antedating the alleged exportations into this country by the plaintiff.

There was no cross-bill filed nor is there any demand for affirmative relief to the defendant.

Plaintiff made a number of motions to dismiss the defendant's separate and distinct defense, mainly on the ground that he failed to allege that notice of his alleged ownership and prior use of the trade-mark had been given to the plaintiff, decision on all of which was reserved.

Each and all of the said motions are denied, with exceptions to plaintiff, and I will decide the instant suit on the merits.

There is a sharp conflict in the evidence not only between the witnesses on behalf of the respective parties, but also in one important particular at least between the affidavit filed by the defendant in opposition to the motion for a preliminary injunction and the testimony given by him on the trial, but I find the facts to be as follows:

The plaintiff alone, or in association with her husband, has been engaged in business as a manufacturer of angora rabbit's wool yarn commonly known as angora, at Tisson, France, since 1910, at which time the label "L. U. P." was adopted and continuously used, except for the interruption from 1914 to 1918, caused by the World War.

The letters "L. U." were taken from the name Lucien and the letter "P." from the name Paul.

The trade-mark has always been used in the same form, white disk, circles, red ink, L. U. P., and the phrases "Made in France" and "Angora Rabbit Wool Spinning," all printed in English.

The angora exported by plaintiff, in association with her husband, was at first principally to England, but later, and also while she was conducting the business alone, both to England and the United States.

The angora business was conducted as a joint enterprise by the plaintiff's husband Lucien Paul and herself until 1924, when plaintiff began solely to conduct the business, due to her husband's illness, and in 1926, all title and trade-marks were assigned to her and the business has since been solely owned and conducted by her.

The plaintiff shipped angora to the United States under the said L. U. P. trade-mark as early as July 28, 1923.

The trade-mark L. U. P. was new and original when adopted by the Pauls in 1910.

The L. U. P. angora of the Pauls was on the market in the United States, and favorably known by the said L. U. P. trade-mark before the defendant imported any of it, and it was called to the defendant's attention by the witness Friedman, who gave to the defendant an L. U. P. label, and told defendant to import the goods, and the defendant said he would do so.

The name of the defendant when communicating and dealing with the plaintiff was Simon Wodsilowsky, which he changed to Simon Woods.

Defendant had considerable correspondence with the plaintiff and all of the letterheads used by the plaintiff in her correspondence with the defendant, under whatever name, carried facsimiles of plaintiff's said L. U. P. trade-mark.

Defendant purchased a considerable quantity of L. U. P. angora from the plaintiff, and it was shipped to him carrying the said L. U. P. labels.

Defendant repeatedly asked plaintiff by letter and personally to make him her American representative, but she finally refused.

Defendant requested plaintiff to make up an inferior and cheaper grade and plaintiff refused.

Defendant tendered orders to plaintiff for more of her L. U. P. angora, but she refused and returned his money.

Defendant, before he imported angora, purchased from the plaintiff imported angora wool, or imitation thereof, made by other manufacturers and carrying labels or trade-marks other than L. U. P.

Defendant never said anything to plaintiff about owning the L. U. P. trade-mark, or using it on his own goods, or about having used it on mercerized thread, nor did the defendant make any claim to the L. U. P. trade-mark from the beginning of his negotiations with the plaintiff to purchase her product until the defendant filed his answer in the instant suit.

Defendant did not, before he imported the angora purchased from the plaintiff, use the L. U. P. trade-mark on or in the angora, or the boxes in which the same was sold.

Defendant, since he imported the plaintiff's product under the L. U. P. trade-mark, has sold under the L. U. P. trade-mark the product of other manufacturers, not of the same quality of plaintiff's, and has copied the labels, box, and label thereon containing the plaintiff's L. U. P. trade-mark, so that any ordinary purchaser would surely be deceived.

Some of the labels used by defendant contained the additional words "Reg. U. S. Pat. Off.," when in fact the defendant had not registered the trade-mark, but contends he erroneously believed it had been registered, and a much larger quantity contained, as additional words to those on plaintiff's labels, the words "Reg. U. S. Pat. Off. Pending"; but the use of such words would not tend in any way to prevent the ordinary purchaser from being deceived.

The plaintiff continued to build up her business in the United States under the trade-mark L. U. P., her sales to Flomenhaft during the year 1929 exceeding $15,000.

At the outset we may dispose of the question of foreign registration by the plaintiff by saying that it was not proved by competent legal evidence, and therefore it is unnecessary to consider whether it could have had any effect in the instant suit, if proved.

The question in the instant suit is, Did the plaintiff or defendant first use the label consisting of two concentric circles with the letters "L. U. P.," for the sale of angora, in the United States of America?

That a business of substance has been developed by the plaintiff under that trade-mark was clearly shown, and it would in no way relieve the defendant of the charge of infringement, even if his use had been greater than the plaintiff's, provided the plaintiff's use was earlier.

One or the other of the parties copied the trade-mark of the other, because they are Chinese copies with the exception of the words quoted as to trade-mark, and registration of trade-mark application placed on those which the defendant says were printed subsequently to those which had no such marking.

The testimony offered in the attempt by the defendant to show the use of such a label by the defendant on mercerized thread, in 1922 or 1923, is not convincing.

No labels used at that time were produced, and the defendant's salesman said they were smaller and placed on the ends of the spools.

The two witnesses offered to show purchases did not describe the labels, the best they did was to identify Exhibit B, when it was shown to them. Neither offered books or records but depended entirely on memory for transactions in 1922 and 1923.

No bill for printing was produced, nor was the printer or his records produced, and, although it was testified that the printer was dead, it was not shown that his records could not be produced, and the defendant was unable to give the name of the artist who drew the design.

This evidence falls far short of the proof that should be required, and in so holding I do not intend to intimate that the salesman and the two other witnesses referred to were deliberately telling what they did not believe, but I doubt the accuracy of their recollection after such a lapse of time. But even if such labels were used on mercerized thread by the defendant (which I believe they were not), the evidence convinces me that the defendant gave up that business and abandoned the labels by 1924.

This leaves for consideration the testimony of the defendant.

He now says that he used the L. U. P. trade-mark on angora from 1925, which was prior to his purchase of the angora with the L. U. P. trade-mark from plaintiff.

The printer of the labels was not produced, nor were any records produced to show a charge therefor or the payment thereof, and no check in payment is produced, and if they were printed in quantities, as testified by defendant, the transaction was large enough to have been paid for by check.

That defendant knew that plaintiff was producing the product is apparent from his first letter to the plaintiff.

That it was first called to his attention by a customer is the only reasonable explanation of defendant's efforts to secure it, and I believe the witness Friedman, who says he called it to defendant's attention.

Defendant testified on the trial to a conversation with the plaintiff, in which he told the plaintiff that the L. U. P. trade-mark was his, but there is no allegation in the answer that he ever notified the plaintiff of any such claim, although he sold the product of the plaintiff under that trade-mark.

In the affidavit submitted by the defendant on the motion for an injunction, the defendant swore: "It is probably true that the plaintiff's goods exported to me at that time were marked with the trademark L. U. P., but in view of the fact that I had used such mark for a period of over four years, I made no mention of the fact and wished to make no point of her use of the mark at the time, because of the fact that I was anxious to import angora either from her or·anybody else due to the shortage thereof."

If it be possible to harmonize the two stories, I have not found the way.

Defendant further testified that he received the plaintiff's product with the labels in about 30 per cent. of the balls of angora, and that he removed those labels and inserted his own labels in the place thereof, notwithstanding the fact that his labels were exactly like the plaintiff's, a story hard to believe.

Defendant has not produced one letter or invoice from the plaintiff, and says he could not, and his failure to produce any one of them strengthens my belief in the truth of · the plaintiff's testimony, that a copy of her trade-mark, printed in red ink, was on every billhead and invoice sent to defendant.

The sales books, produced by defendant are not convincing. If the earlier book shows anything it shows that he abandoned the business of dealing in mercerized thread in 1923, and the later book, with no addresses of those to whom sales are claimed to have been made, does not convince me that defendant had any prior use of the trade-mark. A sales book without addresses of the customers, and the absence of all other books from which such purchasers could be traced, is not the character of proof required under the circumstances of the instant suit.

Every action of the defendant contradicts his claim of ownership of the trademark and its use by him before he made his first purchase of the plaintiff's product, and I cannot give any weight to his testimony; but even if he did have any right to the trademark (which I do not believe), he has so conducted himself toward the plaintiff that in equity and good conscience he has estopped himself to deny her claim to the L. U. P. trade-mark, in the very market where he marketed the plaintiff's product. MacMahan Pharmacal Co. v. Denver Chemical Mfg. Co. (C. C. A.) 113 F. 468; Thackeray v. Saxlehner (C. C. A.) 125 F. 911, 913; Hanover Milling Co. v. Metcalf, 240 U. S. 403, 36 S. Ct. 357, 60 L. Ed. 713; McGraw Tire & Rubber Co. v. Griffith (C. C.) 198 F. 566; Kellogg v. Kellogg Toasted Corn Flake Co., 212 Mich. 95, 180 N. W. 397.

By his own testimony it is apparent that the defendant has not only copied the plaintiff's trade-mark, but by his direction has had the box in which she shipped her product copied, and in such box and under such L. U. P. trade-mark has marketed the products of other manufacturers; and from all the evidence I am convinced that some, at least, of the product so marketed by the defendant was not of as good quality as the product of the plaintiff marketed under the trade-mark L. U. P.

The defendant has infringed the trademark of the plaintiff, and has entered into unfair competition with the plaintiff.

The defendant has offered objections to certain questions asked in the direct examination of the plaintiff, when her testimony was taken by deposition, pursuant to section 639, title 28 U. S. Code (28 USCA § 639), formerly section 863 of the Revised Statutes, and my rulings thereon are filed herewith.

A decree may be entered in favor of the plaintiff against the defendant for a permanent injunction, and accounting of profits and damages, with costs and the usual order of reference.