## THE FRENCH REPUBLIC *v.* SARATOGA VICHY SPRING CO.

### CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 53.   Argued November 4, 1903.—Decided December 7, 1903.

1. Geographic names often acquire a secondary signification indicative not only of the place of manufacture but of the name of the manufacturer or producer, and the excellence of the thing manufactured or produced, which enables the manufacturer or owner to assert an exclusive right to such name as against every one not doing business within the same geographical limits; and even as against them, if the name be used fraudulently for the purpose of misleading buyers as to the actual origin of the thing produced or palming off the productions of one person as those of another.

2. One otherwise entitled to the exclusive use of a name may lose the right of enforcing it by laches and acquiescing for a period of nearly thirty years in its use and by allowing the name to become generic and indicative of the character of the article.

The rule of *nullum tempus* cannot be invoked in our courts in favor of a foreign government suing for the benefit of an individual which is its lessee.

*Quære,* and not decided, whether the rule could be invoked by a foreign government even when suing in its sovereign capacity.

It was not intended by Article VIII of the Industrial Property Treaty of
June 11, 1887, to put citizens of a foreign country on a more favorable
footing than our own citizens or to exempt them from ordinary defences
which might be made by the party prosecuting. Under Article II of
such treaty, the rights of the French Republic are the same and no
greater than those of the United States would be.

3. Where it does not appear that there has been any actual fraud or an
attempt to foist an article upon the public as that of the complainant
and the articles differ in many respects, the use of a name, the exclu-
sive use whereof is claimed by complainant, accompanied by a descrip-
tive word equally prominent which differentiates it from the original
name on a label wholly dissimilar in style, language and form, will not,
after a long continued use without protest, justify the interference of a
court of equity to restrain its use.

THIS was a bill in equity brought in the Circuit Court of the
United States for the Northern District of New York, by the
French Republic, as owner, and La Compagnie Fermiére de
l'Etablissement Thermal de Vichy, (hereinafter termed the
Vichy Company,) as lessee, of the springs of Vichy, France,
against the Saratoga Vichy Spring Company, for the unlawful
use of the word "Vichy," claimed by the plaintiffs as a com-
mercial name or trade-mark, and appropriated for the waters
of the defendant, which are drawn from a certain natural
spring at Saratoga, New York.

Defence: That for fifty years mineral water has been sold
throughout the world under the name of "Vichy," and that
such name has come to denote a type of water, namely, alkaline,
non-cathartic, carbonated water, and does not stand for the
water of any one spring; that defendant has never sold Vichy
as and for that of the plaintiffs, nor in resemblance thereto, but
has so labelled its water that the purchaser shall know that it
is a natural mineral water of Saratoga; and that plaintiffs'
claim is stale.

The bill was dismissed by the Circuit Court upon the ground
that plaintiffs had no exclusive right to the use of the word
"Vichy," and that defendant had never been guilty of an
attempt to palm off its waters as the imported article. 99
Fed. Rep. 733. On appeal, the Court of Appeals reversed

the decision of the Circuit Court, and granted an injunction against the use of one particular label, or "any other label in which the place of the origin of the water is not as plainly and prominently made known as the fact that it is named 'Vichy.'" 107 Fed. Rep. 459.

Plaintiffs thereupon applied for a writ of certiorari, which was granted. Defendant made no similar application, but acquiesced in the decree and discontinued the offending label.

*Mr. Charles Bulkley Hubbell* and *Mr. Archibald Cox* for appellants :

In the absence of the defence relating to the use by the public in the United States of the word "Vichy," the complainants would be entitled to an injunction restraining the use of the word "Vichy" to describe, or as the name of, a water not drawn from the springs at Vichy. *Congress & Empire Spring Co.* v. *High Rock Congress Spring Co.*, 45 N. Y. 291; *Radde* v. *Norman*; L. R. 14 Eq. 348; *Raggett* v. *Findlater*, L. R. 17 Eq. 29 ; *Apollinaris Co.* v. *Norrish*, 33 L. T. R. N: S. 242; *Dunbar* v. *Glen*, 42 Wisconsin, 118; *Anhueser-Busch Brewing Assn.* v. *Piza*, 23 Blatch. 245; 24 Fed. Rep. 149; *Lever Bros., Ltd.*, v. *Pasfield*, 88 Fed. Rep. 484; *City of Carlsbad* v. *Kutnow*, 71 Fed. Rep. 167; *Hill* v. *Lockwood*, 32 Fed. Rep. 389, 395; *Newman* v. *Alford*, 51 N. Y. 189; *Brahan* v. *Beachim*, 7 Ch. D. 848; *Seixo* v. *Provezende*, L. R. 1 Ch. 192; *Wotherspoon* v. *Currie*, L. R. 5 H. L. 508; *Thompson* v. *Montgomery*, A. C. (1891) 217; *Shaver* v. *Heller & Merz Co.*, 108 Fed. Rep. 821; *Pillsbury &c. Co.* v. *Eagle*, 86 Fed. Rep. 608.

The defence based on the uses of the word "Vichy" in the United States is valueless: the fact that the principal complainant is a sovereign power renders the defence of laches inapplicable. The French government, being the owner of the springs and the name appurtenant thereto, is materially interested in the subject matter of the suit and a proper party. *Waterman* v. *Mackensie*, 138 U. S. 252; *Birdsell* v. *Shaliol*, 112 U. S. 485; *Paper Box Cases*, 105 U. S. 766; *Otis Bros. Mfg. Co.*

v. *Crane Bros. Mfg. Co.*, 27 Fed. Rep. 550; Story's Eq. Pl. § 72, quoted and approved in *Gregory* v. *Stetson*, 133 U. S. 579; Foster's Fed. Prac., vol. 1, § 42, p. 110; *Chadbourne's Executors* v. *Coe*, 10 U. S. App. 78; *Williams* v. *Bankhead*, 19 Wall. 563.

If the government of the United States were a complainant in this case, as the government of France is a complainant, there could be no imputation of laches. *United States* v. *Kirkpatrick*, 9 Wheat. 720; *Dox* v. *Postmaster-General*, 1 Pet. 318; *United States* v. *Knight*, 14 Pet. 301; *Gibbons* v. *United States*, 8 Wall. 269; *Gibbons* v. *Chouteau*, 13 Wall. 92; *People* v. *Gilbert*, 18 Johnson's Reports, 229; *Steele* v. *United States*, 113 U. S. 128; *United States* v. *Nashville &c. Ry. Co.*, 118 U. S. 120; *United States* v. *Beebe*, 127 U. S. 338; *United States* v. *Insley*, 130 U. S. 263; *San Pedro &c. Co. v. United States*, 146 U. S. 120; *United States* v. *Thompson*, 98 U. S. 486, 489; *United States* v. *Van Zandt*, 11 Wheat. 184; *Lindsey* v. *Miller's Lessee*, 6 Pet. 666; *Gaussen* v. *United States*, 97 U. S. 584.

The reasons which are good to preclude the imputation of laches in a suit by the United States apply with equal force to a suit by the French Republic. The testimony relating to the irresponsible and untruthful usage of the word "Vichy" should not be considered because it tends only to show a custom or usage which, being unreasonable, uncertain and grounded upon fraud, should not be recognized. *United States* v. *Buchanan*, 8 How. (U. S.) 83, 102; *Tilley* v. *County of Cook*, 103 U. S. 155, 163; *Allen* v. *St. Louis Bank*, 120 U. S. 20, 39; *Vaughan* v. *Holden*, Cro. Jac. 80; *Taylor* v. *Carpenter*, 2 Wood. & M. 1, and cases cited; *Broad Bent* v. *Wilkes*, Willes, 360; 5 Q. B. 701; *Codman* v. *Evans*, 5 Allen (Mass.), 308; 82 Am. Dec. 258; *Tantistry*, Davis's Report, p. 78; Viner's Abridgement, Customs (H), 24.

Mere laches in a case of this character will not defeat the right to injunctive relief. *McLean* v. *Fleming*, 96 U. S. 258; *Menendez* v. *Holt*, 128 U. S. 514; *Law. Mfg. Co.* v. *Tennessee Mfg. Co.*, 138 U. S. 549; *Brown Chemical Co.* v. *Meyer*, 139 U. S. 546; *Singer Mfg. Co.* v. *June Mfg. Co.*, 163 U. S. 186, 202;

*Saxlehner* v. *Eisner*, 179 U. S. 19; *Actiengesellschaftt &c.* v. *Amberg*, 109 Fed. Rep. 151; *Bissel Chilled Plow Works* v. *T. M. Bissel Co.*, 121 Fed. Rep. 357, 375; *Rodgers* v. *Philp*, 1 O. G. 29; Browne on Trade-marks, 2d ed. p. 661; *Wolfe* v. *Barnett*, 24 La. Ann. 97; *Filley* v. *Fassett*, 44 Missouri, 173; *Cohn* v. *Gottschalk*, 14 Daly, 542; *Manhattan Medicine Co.* v. *Wood*, 4 Cliff. 461; *Amoskeag Man. Co.* v. *Garner*, 54 How. Pr. 298; *Gillott* v. *Esterbrook*, 47 Barb. 455; 48 N. Y. 374; *Coleman* v. *Crump*, 70 N. Y. 573; *Sanders* v. *Jacobs*, 20 Mo. App. 96; *Amoskeag Mfg. Co.* v. *Spear*, 2 Sandf. 599, S.C., 128 U. S. 524; *Consolidated Fruit Jar Co.* v. *Thomas*, Cox's Manual, Case 665; *Julian* v. *Hoosier Drill Co.*, 75 Indiana, 408; 128 U. S. 524; *Sawyer* v. *Kellogg*, 9 Fed. Rep. 601; *Williams* v. *Adams*, 8 Biss. 452; *Le Page* v. *Russia Cement Co.*, 51 Fed. Rep. 941.

The intent of article 8 of the treaty in force between the Republic of France and the United States was to prevent the loss of foreign commercial names resulting from anticipatory use, infringement or spoliation. It is submitted that it should not be reasoned that the protection guaranteed by the treaty can be defeated by showing the existence of the very abuses it was framed to prevent. *Saxlehner* v. *Eisner*, 179 U. S. 19; *United States* v. *Rauscher*, 119 U. S. 407; *Geofroy* v. *Riggs*, 133 U. S. 258.

*Mr. Edgar T. Brackett* for appellee:

Defendant did not act in bad faith; in all its labels and advertising it distinguished itself by name, and its water from that sold by appellant; there has been no deceit toward the public; the name Saratoga Vichy makes no claim to being Vichy imported from France, and the only conclusion deducible from the name is that the water comes from Saratoga and has certain qualities like the Vichy. This is perfectly legitimate. *Brown Chemical Co.* v. *Stearns*, 37 Fed. Rep. 360; the test is whether the name or the package deceives the public. *Centaur Co.* v. *Marshall*, 97 Fed. Rep. 785, 790; *Fisher* v. *Blank*, 138 N. Y. 244, 252. Unless there is evidence of actual deception

relief will not be granted. *Jennings* v. *Johnson*, 37 Fed. Rep. 364; *Cohn* v. *Hoffman House*, 7 Misc. Rep. N. Y. 461.

Defendant's bottles and packages are not indentical with complainants.

The defendant in connection with its water did not intend by the word Vichy, to defraud complainants, nor deceive the public; it has never sold its water as, or for, complainant's Vichy, nor in resemblance thereto, but all its water has been, in proper manner, labelled and marked, so that the purchaser shall know that the goods sold by the defendant is a natural mineral water of Saratoga, and not the water of the complainants. *Pope* v. *Hart*, 35 Barb. (N. Y.) 630–636; *Cortland* v. *Herkimer*, 44 N. Y. 22; *Bayliss* v. *Cockroft*, 81 N. Y. 363–371; *Davis* v. *Marvine*, 160 N. Y. 269–276; *Lally* v. *Emery*, 54 Hun (N. Y.), 517–520, 521, 522.

The word Vichy has become a generic name, with the significance stated, and the complainants have no trade-mark, or trade name, therein, or any right to legal protection in the exclusive use of it; a generic name, one merely descriptive of an article, of its qualities, ingredients, or characteristics, cannot be employed as a trade-mark. *Canal Co.* v. *Clark*, 13 Wall. 311–323; *Air Brush Mfg. Co.* v. *Thayer*, 84 Fed. Rep. 640; *Brown Chemical Co.* v. *Stearns*, 37 Fed. Rep. 360; *Clotworthy* v. *Schepp*, 42 Fed. Rep. 62; *Columbia Mill Co.* v. *Alcorn*, 150 U. S. 460; *Corbin* v. *Gould*, 133 U. S. 308–314; *Sterling Remedy Co.* v. *Gorey*, 110 Fed. Rep. 372; *Vitascope Co.* v. *U. S. Phonograph Co.*, 83 Fed. Rep. 30; *N. Y. Asbestos Mfg. Co.* v. *Ambler Asbestos &c.*, 99 Fed. Rep. 85; *Barrett Chemical Co.* v. *Stearns*, 176 N. Y. 27.

Complainants have been guilty of laches, they having stood by and permitted the defendant to build up a business, and establish a good will that has become valuable, so that the granting of present relief would wreck, and absorb to the complainants, a business, which it has permitted to become valuable without complaint, and this is intolerable. If the complainants here have allowed the defendant to build up a profitable

business, on every fair principle, they should be estopped from wrecking it. *Amoskeag Mfg. Co. v. Garner,* 55 Barb. 151; *Leggett v. Standard Oil Co.,* 149 U. S. 287, 294; *Sullivan v. P. & K. R. R. Co.,* 94 U. S. 806, 811; *McKnight v. Taylor,* 1 How. 161, 167; *Godden v. Kimmell,* 99 U. S. 201, 210; *Brown v. Buena Vista,* 95 U. S. 157, 161; *Lewis v. Chapman,* 3 Beav. 133; *Landsdale v. Smith,* 106 U. S. 391; *Saxlehner case,* 179 U. S. 19, 35; *McLaughlin v. People's Ry. Co.,* 21 Fed. Rep. 574; *McIntyre v. Pryor,* 173 U. S. 38, distinguishing *McLean v. Fleming,* 96 U. S. 245.

Complainants cannot escape from this rule, because against the French Republic, as a sovereign power, there is no prescription, and laches cannot be predicated upon any lapse of time.

The principle has no application here. When a foreign government comes into our courts, it stands, and must stand, on the precise plane of a private litigant. No public policy demands anything different, and a holding as asked by the appellants would be well nigh intolerable.

And the treaty between the French Republic and the United States requires the same result. Compilation of Treaties in Force, 1899, p. 684.

The French Republic has no interest in the controversy here, is not a proper party to the record, and her presence on the record, without interest and without right, cannot save the case, in which only the appellant company has any interest, from the result of the laches existing here.

There is no reason why the French Republic should be a party, *Kernochan v. N. Y. Elevated R. R. Co.,* 128 N. Y. 559, 566; and as a nominal party it cannot save any rights to the company. *Maryland v. Baldwin,* 112 U. S. 490; *United States v. Beebe,* 127 U. S. 338, 346; *Waterman v. Mackenzie,* 138 U. S. 252.

The name Vichy is a geographical name, and as such complainants cannot insist on its exclusive use as a trade-name. *Canal Co. v. Clark,* 13 Wall. 311, 324; *Columbia Mill Co. v. Alcorn,* 150 U. S. 460; *Koehler v. Sanders,* 122 N. Y. 65, holding

the word "International" could not be used as a trade name; *Connell* v. *Reed*, 128 Massachusetts, 477, holding "East Indian" could not be so used; *Glendon* v. *Uhler*, 75 Pa. St. 467, as to right to use Glendon, after a borough was created by that name. *Amoskeag Mfg. Co.* v. *Spier*, 2 Sandf. 599; *Barrett Chemical Co.* v. *Stearn*, 176 N. Y. 27; *Levy* v. *Waitt*, 61 Fed. Rep. 1008; *Ill. Watch Co.* v. *Elgin Watch Co.*, 94 Fed. Rep. 667; *Hoyt* v. *Lovett*, 71 Fep. Rep. 173; *Republic* v. *Schultz*, 94 Fed. Rep. 500; *Luyties* v. *Hollander*, 30 Fed. Rep. 623.

The trade-mark label as registered essentially relied on other features and disclaimed the word Vichy. *Richter* v. *Anchor Remedy Co.*, 52 Fed. Rep. 455; *Richter* v. *Reynolds*, 59 Fed. Rep. 577; *Pittsburgh Crushed Steel Co.* v. *Diamond Steel Co.*, 85 Fed. Rep. 637; Browne on Tr. Mks. 2d ed. § 678.

MR. JUSTICE BROWN, after making the foregoing statement, delivered the opinion of the court.

This suit is brought to vindicate the right of plaintiffs to the exclusive use of the word "Vichy" as against the defendant, and incidentally as against all persons making use of the word to denote a water not drawn from the springs of Vichy, now owned by the French Republic and leased to the Vichy Company.

The title of the French Republic to the springs of Vichy, a commune of France, is clearly established. Known for their medicinal qualities since the time of the Roman Empire and originally belonging to the feudal lord of Vichy, they were sold by him in 1444, together with the castle and its dependencies, to Pierre, Duke of Bourbon, in whose family they remained until 1531, when, for the treason of the Constable of Bourbon, they were confiscated by Francis I, and became the property of the crown, in whose possession they remained until 1790, when they were united to the public domain and afterwards passed to the French Republic and its successors, and were operated directly by the officers of the state until June, 1853, when they

were leased for a fixed rental to a firm of which the Vichy Company is the successor. The bottling and exportation of the waters was commenced before 1716, and in 1853 they begun to be exported directly to this country, the shipments in 1893 amounting to about 300,000 bottles. For many years they have been bottled and sold all over the world.

The rights of the defendant originated from a spring discovered in 1872 in the township of Saratoga Springs, New York, the waters of which, though differing from the water of the Vichy Spring both in ingredients and taste, have a certain resemblance to them which suggested the use of the word "Vichy." The water began to be bottled and sold in 1873 by the owners of the spring, and in 1876 became the property of the defendant, which has since sold the water, using various bottles, circulars and labels, containing more or less conspicuously displayed the word "Vichy."

1. As the waters of Vichy had been known for centuries under that name there is reason for saying the plaintiffs had in 1872 acquired an exclusive right to the use of the word "Vichy" as against every one whose waters were not drawn from the springs of Vichy, or at least, as observed by a French court, "from the same hydrographical region which may be called generally the basin of Vichy."

True the name is geographical; but geographical names often acquire a secondary signification indicative not only of the place of manufacture or production, but of the name of the manufacturer or producer and the excellence of the thing manufactured or produced, which enables the owner to assert an exclusive right to such name as against every one not doing business within the same geographical limits; and even as against them, if the name be used fraudulently for the purpose of misleading buyers as to the actual origin of the thing produced, or of palming off the productions of one person as those of another. *Elgin National Watch Co.* v. *Illinois Watch Co.*, 179 U. S. 665; *Newman* v. *Alvord*, 51 N. Y. 189; *Lee* v. *Haley*, 5 Ch. App. 155; *Wotherspoon* v. *Currie*, L. R. 5 H. L. 508;

*Braham* v. *Beachim*, 7 Ch. Div. 848; *Thompson* v. *Montgomery*; 41 Ch. Div. 35; *Seixo* v. *Provezende*, L. R. 1 Ch. App. 192.

In a French case arising in this connection, and brought by the Vichy Company against a rival company owning two springs in the same neighborhood, complaining that by the composition of its name and the arrangement of its labels, as well as by the tenor of its different appeals to the public, the company owning these springs had created a damaging confusion between the two companies and their product, it was held that, while the rival company had a right to the use of the word "Vichy," it was bound to state the name of its springs; the place where they were located as "near Vichy" in letters identical in height and thickness as those of the word Vichy in their advertisements and labels, and also the name of their springs in letters at least half their size—in other words, it was bound to adopt such precautions as would fully apprise the public that it was not purporting to sell the waters of the original Vichy Company, though being in the same basin, they were entitled to use that designation.

2. A serious difficulty in the way of enforcing an exclusive right on the part of the plaintiffs to the use of the word Vichy is their apparent acquiescence in such use by others. For thirty years the defendant, the Saratoga Vichy Company, has been openly and notoriously bottling and selling its waters under the name of the "Saratoga Vichy" until its competition has become an extremely serious matter to the plaintiffs, whose importations began in 1853 with only 316 bottles, which by the year 1893 had increased to 298,500 bottles. The entire shipment of the Vichy Company amounted in 1896 to nearly ten millions of bottles. Under such circumstances, and in view of the further facts that other waters were openly manufactured and sold in this country under the name of Vichy, and that a manufactured water was dealt out by the glass under that name in innumerable soda water fountains throughout the country, as shown by the record in this case, it is impossible to suppose that the plaintiffs were not aware of these infringe-

ments upon their exclusive rights.   It argues much more than ordinary indifference and inattention to suppose that the large amount of this rival water could be advertised and sold all over the country without the knowledge of their agents, who would naturally be active in the protection of their own interests, if not the interests of their principals.   In fact, they had allowed the name to become generic and indicative of the character of the water.   With all these facts before them, and with the yearly increasing sales and competition of the defendant company, no move was made against them for twenty-five years, and until 1898, when this bill was filed.   A clearer case of laches could hardly exist.   *Saxlehner* v. *Eisner*, 179 U. S. 19, 36.

It is said, however, that the doctrine of laches has no application to the neglect of the government to pursue trespassers upon its rights, and that the French Republic is entitled to the benefit of that rule.   It is at least open to doubt whether the maxim *nullum tempus*, applicable to our own government, can be invoked in behalf of a foreign government suing in our courts.   The doctrine is one of public policy, and is based upon the assumption that the officers of the government may be so busily engaged in the ordinary affairs of state as to neglect a vindication of its interests in the courts.   Whether this exemption can be set up by a foreign government in the prosecution of suits against our own citizens—in other words, whether the latter are not entitled to the benefit of the ordinary defences at law, is a question which does not necessarily arise in this case, and as to which we are not called upon to express an opinion.

However this may be, it is clear that the rule of *nullum tempus* cannot be invoked in this case.   While the French Republic is nominally the plaintiff, its interest in the litigation is little, if anything, more than nominal.   For fifty years it has ceased to operate these springs through its own agents, since in 1853 the then Emperor of the French leased them to the predecessors of the Vichy Company, which has since that time bottled and sold the water under successive leases as its own, upon the payment of an annual rental of 100,000 francs

to the government. Its present lease does not expire until 1934. It thus appears that the French Republic has had no real interest in the product of the springs for fifty years, and that it can have no such interest for thirty years to come. Its only title to sue, then, is in a possible depreciation of the rental value of this property after the lapse of the present lease, caused by the unlawful use of the name Vichy by the defendant. This is quite too inappreciable to answer the defence of laches, and, indeed, it is doubtful whether it justifies its joinder as co-plaintiff in the suit. To hold that the French Republic appears in this litigation to be suing for the use and benefit of the Vichy Company would more accurately describe their relations.

In such cases, either where the government is suing for the use and benefit of an individual, or for the prosecution of a private and proprietary instead of a public or governmental right, it is clear that it is not entitled to the exemption of *nullum tempus,* and that the ordinary rule of laches applies in full force. *United States* v. *Beebe,* 127 U. S. 338; *New Hampshire* v. *Louisiana,* 108 U. S. 76; *Maryland* v. *Baldwin,* 112 U. S. 490; *United States* v. *Des Moines &c. Co.,* 142 U. S. 510, 538; *Curtner* v. *United States,* 149 U. S. 662; *United States* v. *American Bell Telephone Co.,* 167 U. S. 224, 264; *Miller* v. *The State,* 38 Alabama, 600; *Moody* v. *Fleming,* 4 Georgia, 115.

The plaintiffs, then, are put in this dilemma: If the Republic be a necessary party to the suit here, as it sues in its private and proprietary capacity, the defence of laches is available against it. Upon the other hand, if it be an unnecessary party, the defence of laches may certainly be set up against the Vichy Company, its co-plaintiff.

We do not think the position of the plaintiffs in this connection is affected or strengthened by the eighth article of the treaty of June 11, 1887, with France and other nations, known as the Industrial Property Treaty, (Comp. of Treaties in Force 1899, 684,) which declares that "the commercial name shall be protected in all the countries of the Union without obligation of deposit,

whether it forms part or not, of a trade or commercial mark." That article was evidently designed merely to protect the citizens of other countries in their right to a trade-mark or commercial name, and their right to sue in the courts of this country, as if they were citizens of the United States. It could never have been intended to put them on a more favorable footing than our own citizens, or to exempt them from the ordinary defences that might be made by the party prosecuting.

This is made the more apparent from Art. II of the treaty, which reads as follows: "The subjects or citizens of each of the contracting States shall enjoy, in all the other States of the Union, so far as concerns patents for inventions, trade or commercial marks, and the commercial name, the advantages that the respective laws thereof at present accord, or shall afterwards accord to citizens or subjects. In consequence they shall have the same protection as these latter, and the same legal recourse against all infringements of their rights, under reserve of complying with the formalities and conditions imposed upon subjects or citizens by the domestic legislation of each State."

If there were any doubt about the rights of the plaintiffs under the eighth article they are completely removed by the wording of the second. The rights of the French Republic are the same, and no greater under this article than those of the United States would be.

3. But conceding that the defence of laches would not be available in a case of actual fraud, or an attempt to foist upon the public the waters of the defendant as those of the orginal Vichy spring, *McIntire* v. *Pryor*, 173 U. S. 38; *Saxlehner* v. *Eisner &c. Co.*, 179 U. S. 19; *Prevost* v. *Grätz*, 6 Wheat. 481, 497; *McLean* v. *Fleming*, 96 U. S. 245; *Menendez* v. *Holt*, 128 U. S. 514, we find but little evidence of such purpose in this record. The two waters not only differ in their ingredients and taste, but the French Vichy is a still, and the Saratoga Vichy, as well as the other American Vichies, an effervescing, water. There is no attempt made whatever by the defendant to simulate the

label of the plaintiffs upon the body of the bottle. The word Vichy is never used by the defendant alone, but always in connection with Saratoga. The two labels not only differ wholly in their design and contents, but even in their language, that of the plaintiffs being wholly in French. Plaintiffs' label contains the word Vichy prominently displayed with a picture of the thermal establishment where it is bottled, and the name of the particular spring. Defendant's label contains the two words, "Saratoga Vichy," in type of the same size and displayed with equal prominence, and a statement that the Saratoga Vichy is far superior to the imported Vichy. It is true that in 1896 a small label was attached to the neck of the bottle upon which the name Vichy was more prominent than that of Saratoga. This label was printed upon a white background, with the word Vichy in prominent red letters, while the word Saratoga appeared in much smaller black letters included between the extended "V" and "Y" of the word Vichy. The Circuit Court considered this to be immaterial, and thought it inconceivable that any one of ordinary perception could be induced to buy this water as the imported Vichy. A majority of the Court of Appeals, however, while agreeing with the Circuit Court as to the total dissimilarity of the main labels, thought a purchaser might be deceived by the neck label into buying the Saratoga for the imported article, and in that particular reversed the Circuit Court, and enjoined the use of the neck label, or of any other label in which the place of the origin of the water was not as plainly and as prominently made known as the word Vichy. As the defendant did not apply for a certiorari, and has acquiesced in the decree of the Circuit Court of Appeals by changing the offending label, we are not called upon to express an opinion as to the deceptive character of this label. *Hubbard* v. *Tod*, 171 U. S. 474.

It was said by this court in *Canal Company* v. *Clark*, 13 Wall. 311, 322, "In all cases where rights to the exclusive use of a trademark are invaded, it is invariably held that the essence of the wrong consists in the sale of goods of one manufacturer or vendor

as those of another; and that it is only when this false representation is directly or indirectly made that the party who appeals to a court of equity can have relief." Applying this doctrine to the case under consideration we are clearly of the opinion that there is no such similarity in the labels as at present used, and that there is no such fraud shown in the conduct of the defendant as would authorize us to say that plaintiffs are entitled to relief.

The decree of the Court of Appeals is therefore

*Affirmed.*