# STAR BREWERY CO. *v.* VAL. BLATZ BREWING COMPANY.

### ESTOPPEL; TRADEMARKS.

1. The mere failure by one party to assert his right by infringement suit against another party for a number of years, unattended by circumstances sufficient to raise an estoppel, will not necessarily bar his right to maintain such a suit. (Following *Michigan Condensed Milk Co.* v. *Kenneweg Co.* 30 App. D. C. 491.)

2. In a trademark interference case the issue is not one merely of priority, as in a patent interference, but involves any issue that might be raised in an *ex parte* case. (Following *Re Herbst,* 32 App. D. C. 565.)

3. If a mark has come to be so public and in such universal use that nobody can be deceived by the use of it, and can be induced from the use of it to believe that he is buying the goods of the original trader, the right of the original trader to the mark is lost.

4. The representation of a star as a mark for beer has become *publici juris,* so as to destroy the right of its registration as a trademark.

No. 676. Patent Appeals. Submitted January 11, 1911. Decided March, 6, 1911.

HEARING on an appeal from a decision of the Commissioner of Patents sustaining an opposition to the registration of a trademark.                                    *Affirmed.*

The facts are stated in the opinion.

*Mr. Fenelon B. Brock* and *Mr. L. D. Turner* for the appellant.

*Mr. Titian W. Johnson* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

This is an appeal from a decision of the Commissioner of Patents sustaining an opposition to the registration of a trademark.

The Star Brewing Company of Bellville, Illinois, applied for the registration of a six-pointed star with the word "Star" within the same, as a trademark for beer.

Opposition was filed by the Val. Blatz Brewing Company, claiming that it had been using the star with a hop blossom and the letters V. B. as a trademark for beer, and would be damaged by the registration of the mark. The various special grounds of opposition are fairly summarized by the Examiner of Interferences as follows:—"That the applicant is not entitled to the exclusive use of a star or the word "star" as a trademark for beer; that both the symbol and the word broadly have lost the power to indicate origin, so far as beer is concerned; that if the applicant ever had the exclusive right to the use of either the symbol or the word, such right has been forfeited; that stars of various shapes have for many years past been used by numerous individuals and corporations, including the opposer, as marks for beer."

The evidence shows that the Star Brewing Company has used the representation of a star as a trademark upon its goods since 1854 or 1855. Its first use was in the form of a six-pointed star with a ring or circle in the center. It also appears that a great many brewers in this country have been and are using the representation of a star, with various additions and embellishments, as a trademark for beer, affixed to barrels, kegs, and bottles. These are established in the Middle and Western States, chiefly, and extend their trade over a considerable territory. Some four of these concerns have used the star, which is the dominant feature of the trademark in all instances, since 1871 to 1875. Others have been using it for from twenty to twenty-five years. The opponent has used it in connection with a hop blossom and monogram for twenty or twenty-one years.

.Testimony tends to show that the star is the traditional symbol of . the beer brewer in the land whence the practice of beer-making in this country seems to have been derived. In German breweries beer is commonly dispensed to employees and visitors in a place called the Sternewirth—a word signifying the host at the sign of the star. Sterne, in the German language, signifies star. Testimony tends to show that some of those connected with the applicant corporation have for years known of the use of the star mark in various forms and designs by other brewers. Considering their nearness to the centers of the beer industry, and the enormous volume of the beer trade generally, they must have known of this very general use of. the star by other brewers. No litigation between these various users of the mark seems ever to have arisen, though quite a number of registrations seem to have been made under the former trademark law. No infringement suit has ever been instituted by the applicant, but it had an interference case in the Patent Office with George Ehret, decided in June, 1908. No other question was involved therein than that of priority between the two contestants, and probable confusion in trade resulting from similarity of the marks used. It was decided in favor of the applicant. *Ehret* v. *Star Brewery Co.* 31 App. D. C. 507. There is nothing to show that the applicant has ever abandoned its trademark, though it has made changes in the design. The mere failure to assert its right by infringement suits againts a particular party for a number of years, unattended by circumstances sufficient to raise an estoppel, would not necessarily bar its right to maintain such a suit now, if so advised. *Michigan Condensed Milk Co.* v. *Kenneweg Co.* 30 App. D. C. 491, and cases cited.

The question presented by this record is whether the representation of a star, as a mark for beer, has become *publici juris,* so as to destroy the right of its registration as a trademark therefor. If it has lost this capability of exclusive appropriation, the refusal of the Commissioner to register it for the applicant must be upheld. As said by Mr. Justice Robb in a recent case: "In a trademark interference proceeding, the issue

which the Commissioner is called upon to determine is not merely one of priority, as in a patent interference proceeding, but involves any issue that might be raised in an *ex parte* case." *Re Herbst,* 32 App. D. C. 565. The law governing the question when a trademark ceases to be an exclusive right because of its general use has been declared by Mellish, L. J., in the following language: "There is no doubt, I think, that a word which was originally a trademark, to the exclusive use of which a particular trader, or his successors in trade, may have been entitled, may subsequently become *publici juris.*  *  *  * Then, what is the test by which a decision is to be arrived at, whether a word which was originally a trademark has become *publici juris?* I think the test must be whether the use of it by other persons is still calculated to deceive the public, whether it may still have the effect of inducing the public to buy goods not made by the original owner of the trademark, as if they were his own goods. If the mark has come to be so public and in such universal use that nobody can be deceived by the use of it, and can be induced from the use of it to believe that he is buying the goods of the original trader, it appears to me, however hard to some extent it may appear on the trader, yet practically, as the right to a trademark is simply a right to prevent the trader from being cheated by other person's goods being sold as his goods through the fraudulent use of the trademark, the right to the trademark must be gone." *Ford* v. *Foster,* L. R. 7 Ch. 611–628, 41 L. J. Ch. N. S. 682, 27 L. T. N. S. 219, 20 Week. Rep. 818.

The same general doctrine has been declared by the Supreme Court of the United States. *Saxlehner* v. *Eisner & M. Co.* 179 U. S. 19–36, 45 L. ed. 60–75, 21 Sup. Ct. Rep. 7; *French Republic* v. *Saratoga Vichy Spring Co.* 191 U. S. 427–436, 48 L. ed. 247–252, 24 Sup. Ct. Rep. 145.

Considering the origin of the mark as applied to beer, its use by other traders in this country extending back for twenty-five years or more, and its subsequent wide use by many others, especially with the apparent acquiescence of the applicant, we think that it is no longer calculated to deceive the public,

or to induce anyone to believe that in buying goods so marked he is buying the goods of the applicant. There was no error in sustaining the opposition to registration, and the decision will, therefore, be affirmed. It is so ordered, and the clerk will certify this decision to the Commissioner of Patents in the manner required by law.                    *Affirmed.*

A petition for a rehearing was denied.