## FEDERAL TRADE COMMISSION v. WALKER'S NEW RIVER MIN. CO.

### No. 3882.

Circuit Court of Appeals, Fourth Circuit.

Oct. 8, 1935.

James M. Brinson, Sp. Atty., Federal Trade Commission, of Washington, D. C. (W. T. Kelley, Chief Counsel, Martin A. Morrison, Asst. Chief Counsel, Federal Trade Commission, and James W. Nichol, all of Washington, D. C., on the brief), for petitioner.

George Cochran Doub, of Baltimore, Md. (Parker, Carey & Doub, of Baltimore, Md., on the brief), for respondent.

Before PARKER and NORTHCOTT, Circuit Judges, and CHESNUT, District Judge.

NORTHCOTT, Circuit Judge.

This is a proceeding under the provisions of the Federal Trade Commission Act § 5 (15 USCA § 45), seeking the affirmance and enforcement of an order entered by the Commission on the 1st day of February, 1934, requiring the respondent, Walker's New River Mining Company, a corporation, to cease and desist from certain practices, found by the Commission to constitute unfair methods of competition forbidden by the act.

In April, 1932, the Federal Trade Commission, hereinafter referred to as the "Commission," filed and served complaint

against the respondent, charging "unfair methods of competition in interstate commerce" in violation of said section 5 of the Federal Trade Commission Act. Respondent's answer to the complaint was filed in May, 1932, and after the complaint was amended, in an immaterial respect, evidence was taken before an examiner of the Commission and a number of witnesses were examined. The matter was then heard before the Commission and after consideration the following order was entered:

"This proceeding having been heard by the Federal Trade Commission upon complaint of the Commission, the answer of respondent, the testimony and evidence, briefs and arguments of counsel for the Commission and counsel for respondent, and the Commission having filed its report stating its findings as to the facts and its conclusion that the respondent has violated the provisions of an act of Congress· approved September 26, 1914, entitled 'An act to create a Federal Trade Commission, to define its powers and duties, and for other purposes,'

"It is now ordered that respondent Walker's New River Mining Company, in or in connection with, offering for sale or selling coal in interstate or foreign commerce or in commerce between the State of West Virginia and the District of Columbia or in the District of Columbia, cease and desist directly or indirectly from—

"(1) Describing or designating said coal as 'New River' coal or by the abbreviation 'N. R.,' or by any other abbreviation, letters or words of the same or similar import unless such coal originates, is produced or mined in that portion of West Virginia lying, being or situated within the territory generally known as the 'New River' field or district.

"(2) Using in its corporate name the words 'New River' or words, or abbreviations of the same or similar import unless coal so offered for sale or sold ·originates or is produced or mined in the 'New River' field or district as described in paragraph one hereof.

"It is further ordered that respondent file a report in writing with the Commission within 60 days from and after service of this order, setting forth in detail the manner and form of its compliance therewith."

After the entry of this order and on March 23, 1934, the respondent tendered an offer of compliance with the order which, in August, 1934, the Commission notified the respondent was not satisfactory and, in its answer to the application before us, the respondent withdrew that offer and requested a determination of the validity of the order of the Commission without reference to this offer of compliance.

The respondent is a West Virginia corporation·and has since the year 1927, and is. now, engaged in the business of mining coal from mines situated at Flint in the county of Randolph in the state of West Virginia, in the vicinity of the town of Elkins, where it has its principal office and place of business. The company sells its coal in various states of the United States in competition with various producers and sellers of coal in interstate commerce, including producers of coal in what is known as the New River coal field, producing and selling "New River" coal.

Coal has been mined in Southern West Virginia in territory contiguous or adjacent to New River since the year 1872, and this territory has for a number of years been known or designated as the New River field or district. Coal is mined in this New River district from several seams, principally, the Sewell, the Beckley, the Fire Creek, and the Welch. These seams extend beyond the boundaries of the so-called New River field, both in a northerly and southerly direction. The Sewell seam extends to the north into Pennsylvania and in that state is known as the Sharon. Coal from all these seams named as being mined in the New River field are classified in geological literature ·as "New River Group of the Pottsville Series." Mining operations in what was originally known as the New River field were extended from time to time until that field,· as it is now known, embraces substantial parts of the counties of Fayette, Raleigh, and Greenbrier in the state of West Virginia.

There are sixty-three producers of coal in what is properly known as the New River field, and for more than twenty-five years last past coal from this field has been and is now being sold as New River coal. It has been and is the policy of the coal operators in the New River field to offer for sale as New

River coal only coal of the highest grade mined in the New River district, irrespective of the particular seam from which it has been extracted. Coal found in any seam in the New River field of an inferior quality is not sold by the producers of coal in that field as New River coal. Coal producers of the New River field have for many years past spent large sums of money in advertising such high-grade product of their mines as "New River" coal. The result has been that wholesale and retail dealers in coal and the consuming public have associated the words "New River" with coal of a distinctively and uniformly high-grade character and quality, produced in what is known as the New River field proper. The words "New River" have therefore acquired a value in the coal business, and the use of the words "New River" is of unquestioned advantage in that business.

The mines of the respondent are situated in a region from seventy-five to one hundred miles distant from what is recognized in the coal business as the New River field or district, a region separated from the New River field not only by distance but by a range of mountains. The mines of the respondent are situated in what is known as the Cheat Mountain Coal field, and the Commission found as a fact that coal produced from respondent mines is not New River coal as known by the purchasing public.

Respondent enjoys a more favorable freight rate for the transportation of its coal to certain sections in the northeast of the United States than producers of coal in the New River district.

At the time of its organization as a company, respondent adopted the words New River and incorporated them in its company name and has used and now uses said words in connection with offering for sale and selling its coal in interstate commerce and has caused the words to be conspicuously displayed in advertising its product. Respondent describes the coal it sells as "New River" coal and invoices it as such.

As the result of respondent's practices, dealers in coal have bought its product and sold it to consumers as New River coal.

From all this the Commission reached the conclusion in its opinion that the practice of respondent in using the words "New River" in its corporate and trade name and offering for sale and selling its coal as New River coal resulted in misleading and deceiving the public into the handling and use of its coal as New River coal, when in fact it was not New River coal as generally recognized for a number of years in the coal trade, and that the effect of these practices of the respondent has been to divert trade to respondent from competitors selling coal produced in the New River district and from competitors selling coal from other districts or fields in the United States, including the Cheat Mountain district.

The sole question presented here is whether the Commission was warranted in reaching the conclusion that the respondent has not the right to use the words "New River" in its business, and if respondent has not this right whether the proceeding before the Commission was in the "interest of the public" as required by the statute.

The findings of the Commission as to facts, if supported by testimony, are conclusive. 15 USCA § 45; Federal Trade Commission v. Algoma Lumber Co., 291 U. S. 67, 54 S. Ct. 315, 78 L. Ed. 655. Here the Commission has found that the efforts of the coal operators, in what is geographically known as the New River field, to distinguish New River coal from other grades of coal and to give it a recognized reputation for quality, have been successful; that New River coal is widely known in the trade as a coal of high quality; that this result has been brought about by the expenditure of large sums of money by the coal operators in what is geographically known as the New River field; and that not all coal mined in the New River field is regarded or sold as New River coal, only that of the best quality mined there being so sold. We are of the opinion that all of these findings are correct and that they are supported by the testimony taken before the Commission.

The Commission, in its opinion held, that, while there can be no exclusive trade appropriation of a geographical term, where a geographical origin has acquired a peculiar trade significance the use of a term descriptive of such article cannot be applied to a product of a different origin, even though such a product may be of identical quality; and that it was misleading to pretend to the trade

and the public that a geographical test of quality is being offered, when in truth the test offered is a geological one. We agree with this holding. In French Republic v. Saratoga Vichy Spring Co., 191 U. S. 427, 24 S. Ct. 145, 146, 48 L. Ed. 247, the court said: "True the name is geographical; but geographical names often acquire a secondary signification indicative not only of the place of manufacture or production, but of the name of the manufacturer or producer and the excellence of the thing manufactured or produced, which enables the owner to assert an exclusive right to such name as against every one not doing business within the same geographical limits; and even as against them, if the name be used fraudulently for the purpose of misleading buyers as to the actual origin of the thing produced, or of palming off the productions of one person as those of another."

■ Suit for unfair competition may be maintained in the case of the use of a name that has acquired a secondary significance, even though the name be not a good trade mark, on account of its generic or geographical nature. Elgin National Watch Co. v. Illinois Watch Case Co., 179 U. S. 665, 21 S. Ct. 270, 45 L. Ed. 365.

■ That the brand "New River" coal has acquired a particular significance in the coal trade, both to the dealer and the consumer, cannot be doubted; that this result has been brought about, as found by the Commission, by the expenditure of large sums of money by the coal operators in the New River field (geographically) is undisputed. This being true, these operators have acquired something of value and are entitled to be protected in the use of it. That the use of these words is of value is shown not only by the testimony, but is to be presumed from the fact that the respondent has shown itself so anxious to use and continue to use the words New River in its business without having in any way contributed to the efforts which gave the words their peculiar value in the coal trade. That such a course on the part of the respondent constitutes an unfair method of competition is plain.

The law with respect to unfair business methods has been well settled by the decisions of the various courts, especially those of the Supreme Court of the United States. In Federal Trade Commission v. Winsted Hosiery Co., 258 U. S. 483, 42 S. Ct. 384, 66 L. Ed. 729, the court discusses the unfairness of the methods of ·competition which passes off one product as and for another product, and this decision has been followed by the courts without exception. Federal Trade Commission v. Algoma Lumber Co., 291 U. S. 67, 54 S. Ct. 315, 78 L. Ed. 655; Federal Trade Commission v. Artloom Corporation (C. C. A.) 69 F.(2d) 36; Federal Trade Commission v. Balme (C. C. A.) 23 F.(2d) 615.

■ In Federal Trade Commission v. Algoma Lumber Co., supra, Mr. Justice Cardozo lays down the unquestioned rule that the Circuit Court of Appeals is not at liberty to make its own appraisal of the testimony or to substitute the judgment of the court for that of the Commission. Here we feel that the conclusion · of the Commission was not only supported by testimony but was the proper one.

Even were the product of the respondent identical in quality with New River coal, that would not justify the use of the words "New River." In Federal Trade Commission v. Royal Milling Co. et al., 288 U. S. 212, 53 S. Ct. 335, 336, 77 L. Ed. 706, the court said: "If consumers or dealers prefer to purchase a given article because it was made by a particular manufacturer or class of manufacturers, they have a right to do so, and this right cannot be satisfied by imposing upon them an exactly similar article, or one equally as good, but having a different origin."

■ That the public interest is involved cannot be doubted. It is manifestly in the interest of the public to prevent the continuance of an unfair practice which tends to deceive the public and divert trade from competitors. Federal Trade Commission v. Winsted Hosiery Co., supra; Federal Trade Commission v. Raladam Co., 283 U. S. 643, 51 S. Ct. 587, 75 L. Ed. 1324, 79 A. L. R. 1191.

While it is true that what is now known as the New River coal field may properly, in the development of the coal business in that region, be extended to include sections not now included, clearly that field may not now be considered to ·include the section in which the respondent's mines are located, distant as they are from seventy-five to one hundred

miles from the New River field and being separated from it by a mountain range.

The order of the Commission was fully warranted by the facts and the law; was made by an experienced body created by Congress for the purpose of deciding questions of this character and the order to cease and desist is affirmed. An enforcement order may be entered in accordance with the prayer of the petition.

Affirmed.