## EL MORO CIGAR CO. v. FEDERAL TRADE COMMISSION.
### No. 4479.

Circuit Court of Appeals, Fourth Circuit.
Nov. 6, 1939.

Philip S. May, of Jacksonville, Fla. (J. T. G. Crawford, of Jacksonville, Fla., on the brief), for petitioner.

M. Marshall Morgan, Sp. Atty., and Martin A. Morrison, Asst. Chief Counsel, Federal Trade Commission, both of Washington, D. C. (W. T. Kelley, Chief Counsel, and James W. Nichol, Atty., Federal Trade Commission, both of Washington, D. C., on the brief), for respondent.

Before PARKER and NORTHCOTT, Circuit Judges, and DOBIE, District Judge.

NORTHCOTT, Circuit Judge.

Petitioner seeks to review and to set aside or modify that portion of an order entered against it by the Federal Trade Commission on February 21, 1939, relating to the use of the word "Havana" in describing, designating, or referring to cigars not made from tobacco grown on the Island of Cuba and reading in its pertinent part as follows:

"It is ordered that the respondent, El Moro Cigar Company, a corporation, its officers, representatives, agents, and employees, directly or through any corporate or other device, in connection with the offering for sale, sale and distribution of cigars in commerce, as commerce is defined in the Federal Trade Commission Act, do forthwith cease and desist from—

"1. Using the word 'Havana,' or any other words, terms, or picturizations indicative of Cuba, alone or in conjunction with any other word or words to describe, designate, or in any way refer to cigars which are not made from tobacco grown on the Island of Cuba.

\* \* \* \* \* \*

"It is further ordered that the respondent shall, within sixty days after service upon it of this order, file with the Commission a report in writing, setting forth in detail the manner and form in which it has complied with this order."

Petitioner is a North Carolina corporation, engaged in manufacturing, selling and distributing various brands of cigars, with its place of business in the city of Greensboro, and is in competition with others engaged in the same business in various states.

In the year 1931 the petitioner acquired from a Pennsylvania concern the trade name "Havana Counts" that had been used since the year 1906, and began the manufacture and sale of a cigar under that label. On the boxes containing the cigars the words "Havana Counts" appeared in large letters and, until the year 1935, the words "Guaranteed Hand Made Imported and Domestic Stock". In the year 1935, the use of these latter words was discontinued and words "Domestic Filler Domestic Wrapper" substituted. The cigars, which retailed at two for five cents, were in a wrapper with the words "Havana Counts" printed on it and were packed in boxes containing fifty or one hundred. They were made in the United States entirely of domestic tobacco.

The Commission found that a very fine quality of tobacco used in the manufacture of cigars is grown on the Island of Cuba, near Havana, that the word "Havana" has acquired a special meaning and significance with manufacturers and users of cigars, and is understood to mean that the cigar to which the name is applied is made of tobacco that is grown on the Island of Cuba.

The Commission further found that words "Notice: These cigars are made in the United States entirely and only of domestic tobacco," placed in much smaller type that that used in the words "Havana Counts", did not qualify or explain the use of the word "Havana" so as to put a prospective purchaser upon notice, but that the two phrases were contradictory.

The Commission also held that the use of the word "Havana" in regard to a cigar that contained no Cuban tobacco was false and misleading and an unfair trade practice with respect to petitioner's competitors engaged in the cigar business in interstate commerce, within the meaning of the Federal Trade Commission Act passed September 26, 1914, 15 U.S.C.A. § 41, et seq.

In asking that the order of the Commission directing it to cease using the word "Havana" in connection with a cigar made in the United States from domestic tobac-

co only, be set aside the petitioner contends that it is a fact well known to both the trade and consumer that a cigar with any appreciable amount of Cuban tobacco in it could not be sold at retail for two for five cents and that therefore the use of the word could not deceive or mislead anybody and was not unfair; that having purchased the brand "Havana Counts", and having used it for a number of years, the petitioner had acquired a property interest by the use of the name that the Commission had no authority to take from it; and that the brand in question had been used for more than thirty-three years and was acquired by the petitioner more than seventeen years after the establishment of the Commission, which had not, in that time questioned the propriety of its use, and that therefore the use of the brand should not be interfered with.

Hearings were held at which numerous witnesses were examined.

■ A study of the voluminous testimony taken shows conclusively that the word "Havana" has acquired a special meaning or significance in the cigar trade when applied to a cigar. It has come to mean that the cigar labeled with a phrase in which the word is used, is made, at least in part, from tobacco grown in Cuba. This being true, it necessarily follows that the word cannot properly be used in describing a cigar made entirely of domestic tobacco. In the case of H. N. Heusner & Son v. Federal Trade Commission, 106 F. 2d 596, 597, decided August 10, 1939, the Circuit Court of Appeals for the Third Circuit said in considering a similar question:

"The difficulty of petitioner's position lies in the fact that the implication of the word 'Havana' is totally false. The purchaser can be guided · by either label or legend, but not by both. * * *"

The Third Circuit has also held to the same effect with regard to the word "Havana", in the second decision in the Bayuk case, handed down June 26, 1939,[1] and a similar holding was approved in the Second Circuit. Federal Trade Comm. v. Edwin Cigar Co., 2 Cir., 67 F.2d 993.

Webster's New International Dictionary, Ed. 1934, defines "Havana" as an adjective meaning "of tobacco, grown in Cuba, of a cigar made in Cuba or from Cuban tobacco."

Having acquired this meaning the use of · the word to describe something different constitutes an unfair trade practice. Federal Trade Comm. v. Walker's New River Mining Co., 4 Cir., 79 F.2d 457; Lighthouse Rug Co. v. Federal Trade Comm., 7 Cir., 35 F.2d 163; Federal Trade Comm. v. Maisel Trading Post, Inc., 10 Cir., 77 F.2d 246.

Nor can the impropriety of the use of the word "Havana" be cured by the sentence, "These cigars are made in the United States entirely and only of domestic tobacco," in smaller type than is used in the words "Havana Counts". Federal Trade Comm. v. Army & Navy Trading Co., 66 App.D.C. 394, 88 F.2d 776.

■ Long use of a misleading brand can vest no right in the user. As was said by Mr. Justice Cardozo, in Federal Trade Comm. v. Algoma Lumber Co., 291 U.S. 67, 54 S.Ct. 315, 320, 78 L.Ed. 655:

"* * * The Federal Trade Commission was not organized till 1914, its jurisdiction then as now confined to interstate and foreign commerce. Silence up to that time is not even a faint token that the misapplied name had the approval of the industry. It may well have meant no more than this, that the evil was not great, or that there was no champion at hand to put an end to the abuse. Even silence thereafter will not operate as an estoppel against the community at large, whatever its effect upon individuals asserting the infringement of proprietary interests. French Republic v. Saratoga Vichy Spring Co. [La Republique Francaise v. Saratoga Vichy Spring Co.], 191 U.S. 427, 24 S.Ct. 145, 48 L.Ed. 247. There is no bar through lapse of time to a proceeding in the public interest to set an industry in order by removing the occasion for deception or mistake * * *."

■ It cannot be successfully contended that the interest of the public is not involved. As we said in the Walker's New River Mining case, supra [79 F.2d 460]:

"That the public interest is involved cannot be doubted. It is manifestly in the interest of the public to prevent the continuance of an unfair practice which tends to deceive the public and divert trade from competitors."

■ The findings of fact of the Commission, if supported by substantial evidence,

---

[1] No opinion filed.

432

are conclusive. Federal Trade Comm. v. Walker's New River Mining Co., supra; Federal Trade Comm. v. Algoma Lumber Co. et al., supra.

■ It has been urged on behalf of the petitioner that, should the Commission's order be enforced, a reasonable time should be allowed before it becomes effective, so that petitioner's labels and advertising matter could be changed. This matter is more properly within the province of the Commission rather than the courts. We are of the opinion that we have no power to order any delay in the putting into effect of a lawful order of the Commission.

■ The findings of fact made by the Commission are supported by the great weight of the evidence. The order made was a proper one and an order will be entered enforcing it.