Hon. Darrell W. Harp Assistant Commissioner New York State Department of Transportation
This is in response to your letter requesting an opinion as to what, if any, proprietary rights are held by a Mr. Nigel Chattey, and corporations associated with him, in regard to proposed projects to redredge the Erie Canal and build a man-made island in New York harbor, projects commonly referred to as, respectively, ICONN-Erie and ICONN.
In 1983, the State Legislature authorized an expenditure of $100,000 "[f]or a feasibility study of the ICONN-Erie project" (L 1983, ch 54, p 901). Briefly stated, ICONN-Erie refers to a plan to redredge the Erie dredged spoil or other sources to construct a man-made island in New York Harbor. The island would be used for various industrial projects: coal, oil and gas storage; fossil fuel power plants; and various waste disposal facilities (ICONN is an acronym for island complex off-shore New York and New Jersey).
The Department of Transportation was given administrative responsibility for the feasibility study. New York University's Graduate School of Public Administration in association with Parsons, Brinckerhoff, Quade 
Douglas was selected to perform the study. An advisory committee was established to oversee the work of the consultant. The committee's duties include: definitions of project specifics; review of interim reports and analyses; providing study direction and preparing final recommendations to the Governor.
During the course of the committee's meetings, the question of proprietary rights in the ICONN project arose. Mr. Nigel Chattey has asserted that he has been using the terms ICONN and ICONN-Erie since February, 1977 (and the term ICON since 1975). Mr. Chattey apparently was involved in conceptualizing ICONN and set up various entities to insure its realization (Hydro-ICONN, Inc.; Nigel Chattey Associates; The ICONN-Erie Foundation). Because of his use of these terms, Mr. Chattey now claims he holds a valid, protectable service mark in the terms ICONN and ICONN-Erie. There have also been allusions that Mr. Chattey has a proprietary interest in the concept of ICONN and ICONN-Erie (see minutes, ICONN-Erie Feasibility Study Advisory Committee Meeting, June 1, 1984, p 4). Mr. Chattey has offered to license the service marks ICONN and ICONN-Erie to the State of New York for $1. You have asked our opinion as to (1) the nature and extent of the proprietary rights of Mr. Chattey and the various corporations associated with him, and (2) what course of action should be undertaken by the Committee and the Department of Transportation so as to fulfill the legislative mandate to perform the study as required by the appropriation.
Mr. Chattey claims that the names "ICONN" and "ICONN-Erie", an idea, and is not afforded protection under the Patent Law. Had Mr. Chattey invented a new type of dredging process, or a new type of manmon-law occurs only under particular circumstances, none of which are present here.
The Federal Patent Law affords protection for any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof (35 U.S.C. § 101). An idea, without any physical embodiment, is not protectable (Gottschalk v Benson, 409 U.S. 63
[1972]). Although Mr. Chattey may have spent money and time in studying ICONN, and reports may have been written, ICONN remains an idea, and is not afforded protection under the Patent Law. Had Mr. Chattey invented a new type of dredging process, or a new type of man-made island, he might be eligible for a patent. ICONN, however, remains a vague idea, and there is no indication in any of the materials submitted with your request that anything was invented or discovered in the course of Mr. Chattey's research.
Copyright protection is available for original works of authorship that are fixed in any tangible medium of expression (17 U.S.C. § 102[a]). Although a copyright may exist in Mr. Chattey's various written expressions referring to ICONN, no copyright protection is available for his ideas of redredging the Erie Canal or building a man-made island in New York Harbor. It is well established that ideas cannot be copyrighted (17 U.S.C. § 102[b]). Mr. Chattey's ICONN ideas, therefore, once communicated, are free to be used by anyone, in any form; it is only Mr. Chattey's particular expressions of his ideas, in concrete form, such as writings, that are subject to copyright (Dollcraft Industries, Ltd. vWell-Made Toy Mfg. Co., 479 F. Supp. 1105 [EDNY, 1978]). Although occasionally proposals are made in the legal community that ideas should be subject to copyright, it is clear that an explicit amendment of the copyright law would be necessary (see 17 U.S.C. § 102; Hopkins, "Ideas, Their Time Has Come": An Argument And Proposal For Copyrighting Ideas, 46 Albany Law Review, 443).
In certain situations, the disclosure of an idea can give rise to a "quasi-contract", entitling the person making the disclosure to be compensated for the use of his idea. These cases, however, arise only in commercial situations, where an idea is appropriated for use by another to make a profit (Decorative Aides, Inc. v Staple Sewing Aides Corp.,497 F. Supp. 154, 160 [SDNY, 1980), affd 657 F.2d 262 [2d Cir, 1981]), and where there is an agreement that the provider of the idea would be compensated for the use of the idea (Robbins v Frank Cooper Associates,19 A.D.2d 242 [1st Dept], revd on other grounds 14 N.Y.2d 913; S.S.Silberblatt, Inc. v East Harlem Pilot Block, 608 F.2d 28 [2d Cir, 1979]). Because these factors are not present in the immediate case, it does not appear that Mr. Chattey would be able to recover under a claim of quasi-contract.
Mr. Chattey has offered to license his ICONN service mark for $1. Such an agreement could become the basis for an argument by Mr. Chattey that he had entered a business relationship with the State and that the disclosure of his ICONN ideas were made pursuant to a "quasi-contract".
Mr. Chattey claims that ICONN is a valid service mark. Service marks are identical to trademarks, except that service marks protect things of an intangible nature, particularly services (15 U.S.C. § 1127). Registration and protection of service marks are the same as for trademarks (ibid.). If Mr. Chattey can substantiate his claim that he has used the terms ICONN and ICONN-Erie since 1977 as a service mark for his corporations, he may have a valid service mark. The protection afforded, however, is only for the terms "ICONN" or "ICONN-Erie" to describe engineering and consulting services rendered by his firm (see15 U.S.C. § 1127, et seq.). Again, there is no protection of the ideas on which ICONN is founded, only the use of the term to describe an engineering, consulting or other service offered by Mr. Chattey's corporations. Mr. Chattey's attorneys appear to recognize this limited scope of potential service mark protection in ICONN in a letter to the Assistant Commissioner of Transportation, Henry L. Peyrebrune, dated June 22, 1984. In the letter, service mark protection is only claimed for "the services of engineering research, design and development of [proposals] to build a man-made industrial island and deepwater water complex in the New York bight * * *; to build a bulk commodity marine logistics system linking the Great Lakes to the Atlantic Ocean for the purpose of domestic and international trade in bulk commodities trans-shipped via the industrial island/deepwater post-ICONN * * * [and] modernize the Erie East and Oswego Barge Canals in New York State to accommodate the transport of bulk commodities between ICONN and the Great Lakes * * *." As thus stated, the service mark protection claimed does not apply to any specific proposal or idea for island construction or canal dredging, but rather, only to the services offered by Mr. Chattey's firms.
Trade and service marks, when they become widely used, may become subject to "generification". That is where a word, which may have properly been the subject of a trade or service mark at one time, becomes so associated in the public mind with the item or service to which it applied so as to become indicative of a class of articles in general, the word will no longer be protected as a trademark for a particular article of the class of articles to which it relates (Trademarks, 74 Am Jur 2d § 48, p 731), for example, escalators, or vichy water (Haughton Elevator Co. vSeeberger, 85 USPQ 80 [1950]; French Republic v Saratoga Vichy SpringCo., 191 U.S. 427 [1902]).
Although ICONN has been used to describe the plans for redredging and island building, it is unclear that the use of the term has been so widespread so as to become generic for off-shore island construction. Although public and private sector officials involved in this project may use "ICONN" to refer to an off-shore island, it is our opinion that the term is not so widely used so as to constitute a generic term. Unlike escalators or vichy water, ICONN is not familiar to the general public as a term to describe a man-made island. Because its use has not risen to this level, it is unlikely that a valid service mark for ICONN could be attacked as having become generic.
Although ICONN is not a term widely used by the general public, it was used by the Legislature when it appropriated money for the subject study. From the materials submitted, it appears that Mr. Chattey is contending that because the Legislature specifically referred to his project in its allocation, the study should solely concern itself with the projects Mr. Chattey has been developing. It is our opinion that this argument is without merit. Although the term ICONN is not so widely used so as to become a generic term, it is unlikely that its use by the Legislature is so narrow so as to only refer to the specific projects developed by Mr. Chattey. A more logical reading of the allocation is that by referring to ICONN, the Legislature intended to study Mr. Chattey's ideas, and others of that type. Furthermore, even if the reference was to Mr. Chattey's projects alone, it is inherent in a feasibility study that alternatives and related projects be studied also. The committee, therefore, has authority to study not only Mr. Chattey's projects, but other proposals and related plans for redredging and island construction.
In conclusion, although Mr. Chattey has no proprietary interest in the idea behind ICONN, he may hold a valid service mark in the terms ICONN and ICONN-Erie. The committee should freely explore the ideas proposed by Mr. Chattey and others, and because these ideas are in the public domain, it may include any portions of those ideas in their report. Because of the possibility of a valid service mark in the ICONN name, use of the term, especially to describe any consulting work offered by Mr. Chattey's competitors should be avoided. The most prudent course would be to eliminate use of the term completely, except where absolutely necessary, for instance, in tracking the language of the appropriations statute.
We conclude that copyright and trademark protection is not available to protect the idea of a man-made island in New York Harbor to be used for industrial purposes, nor are they available for the idea of redredging the Erie Canal to allow for the passage of larger ships.