## DART v. LUCKETT-WAKE TOBACCO CO.

(Circuit Court of Appeals, Fourth Circuit. January 6, 1920.)

### No. 1753.

TRADE-MARKS AND TRADE-NAMES ⟨⟩58—TRADE-MARK HELD NOT INFRINGED, THOUGH BOTH MARKS CONSISTED OF CRESCENT AND STAR OR STARS.

A trade-mark, consisting of a crescent resting on its outer curve, with the points extending upward and having a single star in the open space between them, *held* not infringed by a mark, consisting of a crescent standing upright on one of its points, with three stars superimposed on the body of crescent itself, where there was no proof that any consumer had ever been misled, or that defendant had ever acted in bad faith or unfairly.

Appeal from the District Court of the United States for the Eastern District of Virginia, at Richmond; Edmund Waddill, Jr., Judge.

Suit by the Luckett-Wake Tobacco Company against Joseph A. Dart, doing business as the Dart Tobacco Company. From a decree for plaintiff, defendant appeals. Reversed and remanded, with instructions.

A. B. Dickinson and C. V. Meredith, both of Richmond, Va., for appellant.

Lanier McKee, of New York City, and Lewis C. Williams, of Richmond, Va. (Williams & Mullen, of Richmond, Va., and Hervey, Barber & McKee, all of New York City, on the brief), for appellee.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

KNAPP, Circuit Judge. In the court below the appellee was plaintiff and the appellant defendant; they will be so referred to in this opinion. The suit was brought to restrain the infringement of a trademark, and these facts appear:

The plaintiff, Luckett-Wake Tobacco Company, an Arizona corporation, has its principal place of business at Louisville, Ky. The defendant, Joseph A. Dart, carries on business at Richmond, Va., under the trade-name of Dart Tobacco Company. Both are engaged in handling and exporting leaf tobacco, particularly to markets on the west coast of Africa, where they appear to be more or less in competition.

Plaintiff's trade-mark, adopted by its predecessor in 1887, was registered in the Patent Office on April 28, 1903, under the Trade-Mark Act of March 3, 1881, c. 138, 21 Stat. 502. It consists of or represents a crescent with its points turned upward, and with one star above the bottom of the crescent and between the two points. In the registration papers both figures are in solid black. This trade-mark is shown on hogsheads and other containers in stencil, and on samples of tobacco by small tags. In stenciling it on hogsheads, tierces, and the like, the colors used are blue, black, red, and silver, denoting the different grades; and different shades are shipped to different localities. The goods are known as the "Star and Crescent" brand.

The trade-mark used by defendant to a limited extent for the last

10 or 11 years is a blue crescent on which are placed three red stars; the crescent standing on one of its points, with the upper point leaning slightly forward. The colors named have been used without change since the adoption of the trade-mark, and goods so labeled are known as the "Three Star" brand.

It will thus be seen that the two devices, though composed of the same elements, are of markedly dissimilar appearance. A crescent resting on the middle of its outer curve, with points extending upwards, and having a single star in the open space between them, entirely separated from the crescent, is essentially different as an object of sight from a crescent standing upright on one of its points, with three stars superimposed on the body of the crescent itself; and this without regard to the color of crescent or star. The unlikeness is obvious to casual observation; the untrained eye distinguishes them at a glance; neither would be taken for the other, whether seen together or apart. In short, it seems clear to us, from the testimony describing the two brands, and still more from inspection of exhibits which show their actual appearance, that as a practical matter the brand of defendant bears no such resemblance to the brand of plaintiff as would be at all likely to confuse or mislead. And this judgment of the senses is strongly confirmed by the lack of proof that any customer, either dealer or consumer, ever has been confused or misled. It is therefore of little significance that both brands may be designed to attract Mohammedan trade, since the dissimilarity of defendant's device is so manifest as to preclude deception. Moreover, there is no evidence that defendant has at any time acted in bad faith or conducted his business unfairly. He testified to the use of his brand for some years before he knew or heard that plaintiff had a star and crescent trade-mark, and his statement in that regard is not disputed. The question here is solely one of infringement.

The applicable rule of law in such case appears to be well settled. In McLean v. Fleming, 96 U. S. 245, 255 (24 L. Ed. 828), the Supreme Court says:

"Colorable imitation, which requires careful inspection to distinguish the spurious trade-mark from the genuine, is sufficient to maintain the issue; but a court of equity will not interfere, when ordinary attention by the purchaser would enable him at once to discriminate the one from the other."

In Liggett & Myers Tobacco Co. v. Finzer, 128 U. S. 182, 184, 9 Sup. Ct. 60 (32 L. Ed. 395), a case very much in point, it is said:

"The two stars, the one used by the complainant, and the one used by the defendant, are so different in form and surroundings, that it would not be possible for any person, not afflicted with color blindness, to mistake one for the other. * * * The judgment of the eye upon the two is more satisfactory than evidence from any other source as to the possibility of parties being misled so as to take one tobacco for the other; and this judgment is against any such possibility. Seeing in such case is believing; existing differences being at once perceived and remaining on the mind of the observer. There is no evidence that any one was ever misled by the alleged resemblance between the two designs."

In Columbia Mill Co. v. Alcorn, 150 U. S. 460, 467, 14 Sup. Ct. 151, 153 (37 L. Ed. 1144), reviewing numerous cases, the court sums up its conclusions as follows:

"So it cannot be said that the defendants were personating the complainant's business by using such a description or brand as to lead customers to suppose that they were trading with the appellant. Even in the case of a valid trade-mark, the similarity of brands must be such as to mislead the ordinary observer."

In French Republic v. Saratoga Vichy Spring Co., 191 U. S. 427, 440, 24 Sup. Ct. 145, 148 (48 L. Ed. 247), the following is quoted with approval from Canal Co. v. Clark, 13 Wall. 311, 322, 20 L. Ed. 581:

"In all cases where rights to the exclusive use of a trade-mark are invaded, it is invariably held that the essence of the wrong consists in the sale of goods of one manufacturer or vendor as those of another, and that it is only when this false representation is directly or indirectly made that the party who appeals to a court of equity can have relief."

Tested by these authorities, it must be held that the facts here of record fail to establish the charge of infringement. The plaintiff is undoubtedly entitled to protection from colorable or deceptive imitations of its particular combination of elements that are older than history; but plainly, as we think, it is not entitled to exclude the use of another combination so dissimilar in structure and appearance as to be instantly distinguishable to the most ordinary observation.

As this conclusion determines the case, in whatever aspect considered, there is no occasion to discuss the other questions raised by appellant. The decree will be reversed, and the cause remanded, with instructions to dismiss the complaint.

Reversed.